UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN LAMPMAN,

      Plaintiff,                                        Hon. Janet T. Neff

v.                                                    Case No. 1:18-cv-728

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Secretary of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether

there exists in the record substantial evidence supporting that decision. *See Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Secretary of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence

will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## BACKGROUND

Plaintiff was 49 years of age on her alleged disability onset date. (PageID.195).  She successfully completed high school and worked previously as a nurse's assistant.  (PageID.56-57).  Plaintiff applied for benefits on August 1, 2015, alleging that she had been disabled since January 13, 2015, due to cervical spondylosis and arthritis.  (PageID.195-201, 225).

Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  (PageID.104-93).  Following an administrative hearing, ALJ Sarah Smisek, in an opinion dated January 12, 2018, determined that Plaintiff did not qualify for disability benefits.  (PageID.49-58, 74-102).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (PageID.40-44).  Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also

provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997).

The ALJ determined that Plaintiff suffers from degenerative disc disease, a severe impairment that, whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.52). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform light work subject to the following limitations: (1) she can never climb ladders, ropes, or scaffolds; (2) she

cannot crouch or crawl, but can occasionally perform other postural movements; (3) she must avoid concentrated exposure to hazards, including moving machinery and unprotected heights; (4) she requires a sit/stand option; (5) she is limited to work than can be performed sitting or standing such that any change in position will not cause her to be off task; and (6) she needs to be able to change positions every thirty minutes. (PageID.52-53).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).

This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert. The vocational expert testified that there

existed approximately 160,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (PageID.98-100). This represents a significant number of jobs.  *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I.   Medical Evidence

In addition to Plaintiff's statements and hearing testimony, the administrative record contained copies of Plaintiff's medical treatment records.   The ALJ described this evidence as follows:

> The claimant began taking Ibuprofen for acute neck pain on January 14, 2015. She was also referred to physical therapy. On January 15, 2015, a cervical spine x-ray showed degenerative facet arthropathy with mild left foraminal narrowing at the C5-6 level (Exhibit 6F/19, 27-30, 35).
>
> On March 20, 2015, an electromyography (EMG) and nerve conduction study (NCS) of the bilateral upper extremities showed evidence of borderline carpal tunnel syndrome. Gary G. Gurden, MD, did not think the borderline carpal tunnel syndrome was symptomatic clinically. There was no convincing evidence of cervical radiculopathy or other peripheral entrapment neuropathy (Exhibit 1F/9).
>
> On April 24, 2015, a magnetic resonance image (MRI) of the cervical spine demonstrated mild multi-level disc degeneration, spondylosis, and facet arthrosis without any significant central canal stenosis or disc herniation. There was severe right-sided neural foraminal stenosis at the C4-5 level, moderate left-sided neural foraminal stenosis at the C4-5 level, bilateral neural foraminal stenosis at the C5-6 level, as well as right-sided neural foraminal stenosis at the C6-7 level. At C3-4, the left neural foramen was mildly narrowed (Exhibit 1F/8).

> On April 16, 2015, the claimant reported left arm weakness that increased with performing daily activities. This pain decreased when she used heat or rested. Neck pain as well as bilateral arm pain (right worse than left) had begun in October 2014 when she started having left arm pain. Physical therapy did not provide much improvement. The EMG study was suggestive, but not diagnostic, of carpal tunnel syndrome. Physical examination findings indicated a height of five feet and five inches, a weight of 198 pounds, and blood pressure of 121/76. The body-mass index [BMI] was 32.95. Strength was full at 5/5 throughout the bilateral upper extremities [at the bilateral deltoid, biceps, triceps, brachia! radialis, the wrist extensors, wrist flexors, and the intrinsic musculature]. Cervical spine x-rays demonstrated extensive facet joint disease especially at the C4-5 and C5-6 levels. An oblique view x-ray from January 2015 showed narrowing of the neural foramina at the C4-5 level (Exhibit 1F/4-5).
>
> On April 30, 2015, an appointment for a cervical epidural steroid injection was made. The claimant also received a home traction unit for use often to fifteen minutes daily (Exhibit 1F/3).
>
> On May 7, 2015, the claimant received a cervical epidural injection under fluoroscopy with epidurogram. The post-operative diagnosis was spondylosis with early cervical radiculopathy and stenosis (Exhibit 1F/6).
>
> At a July 23, 2015 office visit, Yousif Hamati, MD, indicated that the claimant reported a cervical epidural injection helped "a lot" and requested another injection, which was scheduled for August 7, 2015 (Exhibit 1F/1).
>
> On September 3, 2015, the claimant reported have a major difficulty with her lower back. There was a moderate amount of pain shooting down the right leg with numbness and tingling. X-rays of the lumbar spine demonstrated severe arthritis at the L4-5 level as well as a transitional vertebra of L-5 to the sacrum (Exhibits 2F/1 and 3F/2).
>
> A lumbar spine MRI taken on September 16, 2015 demonstrated bilateral neural foraminal narrowing at the L5-S1 level. The cauda equina had a taut posterior appearance suggesting a possible tethered cord. There was also non-specific subcutaneous soft tissue edema overlying the lumbosacral spine. Multi-level discogenic and spondylotic changes resulted in mild spinal canal stenosis at the L4-

> 5 and L5-Sl levels and mild bilateral neural foraminal narrowing at the L5-Sl level (Exhibits 2F/2-3 and 3F/3-4).
>
> A November 21, 2015 consultative physical examination indicated cervical spondylosis. The claimant had good strength and sensation throughout. She did have some difficulty performing the tandem gait. The claimant was 65 inches tall and weighed 198 pounds. Grip strength was 9.6 kilograms on the right and 7.2 kilograms on the left. Gait and station were normal; the claimant was able to ambulate without the use of any assistive devices. Manual muscle strength testing was 5/5 throughout. Reflexes were symmetric at 2/4. Sensation capability was intact. There was no joint effusion or crepitus.
>
> The claimant had a full range of motion of the cervical spine in all planes of movement. Movements of the lumbar spine were also full in all planes of movement. The claimant demonstrated a full range of motion of all joints of the upper and lower extremities, including the shoulders, elbows, wrists, hips, knees, and ankles (Exhibit 4F).
>
> On January 5, 2017, Dr. Yousif reviewed the MRI with the claimant, who continued to have neck pain and low back pain. The low back was more bothersome than the neck pain. There was definite degenerative disc disease at the L5-S1 level. The claimant requested an injection; an appointment was arranged for an L-5 nerve root injection. The physician wanted the claimant to avoid surgery (Exhibit 5F/4).
>
> On October 1, 2017, a cervical spine MRI showed a minimal disc bulges as well as bilateral neuroforaminal stenosis at C4-5 and C5-6. There was no evidence for central canal stenosis or cord compression (Exhibit 8F/10-l l). On October 6, 2017, Kenneth J. Easton, MD, indicated the claimant had some symptoms suggestive of C-6 radiculopathy. A C5-6 anterior cervical decompression fusion could perhaps help in the event of a recurrence of radicular symptoms, although this was not the case at the present (Exhibit 8F/8).

(PageID.35-37).

**II. The ALJ Properly Assessed Plaintiff's Subjective Allegations**

At the administrative hearing Plaintiff testified that she was more limited than the ALJ recognized. For example, Plaintiff testified that she experiences pain in her neck and upper extremities regardless of her activity level or posture. (PageID.87-88). Plaintiff reported that, while she performs a variety of household activities, she can do so for only thirty minutes before she must sit in a reclining chair for thirty minutes. (PageID.89). Plaintiff reported that she can walk only very short distances before experiencing "throbbing" pain in her legs. (PageID.92-93). Plaintiff also reported that she cannot sit in one position for longer than 15-20 minutes. (PageID.94). The ALJ discounted Plaintiff's testimony, however, concluding that Plaintiff's subjective complaints were not consistent with the evidence of record. (PageID.54). Plaintiff argues that she is entitled to relief because the ALJ's rationale for discounting her testimony is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also, Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also, Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997)

(quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard.

First, it must be determined whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. *See* Titles II and XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling 16-3p, 2016 WL 1119029 at *3-4 (S.S.A., Mar. 16, 2016). Next, the intensity and persistence of the claimant's symptoms are evaluated to determine the extent to which such limit his ability to perform work-related activities. *Id.* at *4-9.[1]

As the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004). But, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant

---

[1] Social Security Ruling 16-3p rescinded Social Security Ruling 96-7p. *Id.* at *1. But, the adoption of this new Social Security Ruling did not alter the analysis for evaluating a claimant's subjective statements. Instead, as the Social Security Administration stated, it was simply "eliminating the use of the term 'credibility' [so as to] clarify that that subjective symptom evaluation is not an examination of an individual's character." *Ibid.* As courts recognize, aside from this linguistic clarification, "[t]he analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p." *Young v. Berryhill*, 2018 WL 1914732 at *6 (W.D. Ky., Apr. 23, 2018).

conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also, Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, the ALJ is not permitted to make credibility determinations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). Instead, the ALJ's rationale for discrediting a claimant's testimony "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for

that weight." *Id.* at 248. Accordingly, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

The ALJ articulated several reasons for discounting Plaintiff's testimony. Specifically, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.
>
> The claimant's statements about the intensity, persistence, and limiting effects of her symptoms, are inconsistent because the medical evidence does not support these statements. The limited and somewhat sporadic record of medical treatment since the alleged onset date of January 13, 2015 does not support additional limitations other than those described in [the RFC assessment] of this decision. The claimant's occasional use of Tylenol without the use of other medications or treatment modalities is not indicative of debilitating pain or other work-preclusive limitations. In addition, the claimant's somewhat varied daily activities, including housework, laundry, and taking her niece to gymnastics class, are not impressive of a combination of disabling limitations.

(PageID.54).

Plaintiff argues that the ALJ applied an incorrect legal standard when evaluating her testimony and statements. As noted above, the ALJ found that Plaintiff's statements were "not entirely consistent with" the evidence. Plaintiff

argues that the relevant Social Security regulation requires the ALJ to accept "any" subjective statement unless such is "inconsistent with" the evidence. Plaintiff further argues that finding that a statement is "not entirely consistent with" the evidence does not equate with finding a statement "inconsistent with" the evidence. According to Plaintiff, only "inconsistent" statements can be discounted. The Court rejects Plaintiff's argument.

First, Plaintiff has misstated the relevant Social Security regulation. Plaintiff argues that, pursuant to 20 C.F.R. § 404.1529(c)(3), the ALJ must accept "any" subjective statement offered by a claimant unless it is "inconsistent with" the evidence. But, the cited provision instructs the ALJ how to evaluate "any symptom-related functional limitations" articulated by the claimant's treating sources. *Id.* This provision does not stand for the proposition, articulated by Plaintiff, that the ALJ must accept her subjective statements unless such are found to be inconsistent with the evidence.

Rather, the relevant regulation instructs the ALJ to evaluate a claimant's subjective statements "in relation to the objective medical evidence and other evidence" to determine "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4). This provision further provides that a claimant's subjective statements "will be determined to diminish [the claimant's] capacity for basic work activities to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can

reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

In sum, while Plaintiff argues that her subjective statements must be accepted absent a finding that such are entirely inconsistent with the record, the regulation instead provides that Plaintiff's statements need be credited only if such are reasonably consistent with the evidence. The ALJ concluded that Plaintiff's subjective allegations were not reasonably consistent with the medical and other evidence. In light of the evidence noted above, the Court finds that the ALJ's decision to discount Plaintiff's subjective allegations is consistent with the proper legal standard and supported by substantial evidence. Accordingly, Plaintiff's argument is rejected.

## II.     Medical Opinion Evidence

On July 6, 2017, Dr. Yousif Hamati completed a one-page fill-in-the-blank form regarding Plaintiff's ability to perform work activities. (PageID.369). The doctor reported that Plaintiff could perform work subject to the following limitations: (1) no lifting over 20 pounds; (2) she requires a sit/stand option; and (3) no bending/stooping or twisting. (PageID.369). The ALJ afforded only "partial weight" to Dr. Hamati's opinion. (PageID.56). Plaintiff argues that she is entitled to relief because the ALJ failed to afford appropriate weight to the opinions of her treating physician.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Secretary of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule

and permits meaningful review of the ALJ's application of the rule." *Ibid.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Ibid.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

First, most of the limitations articulated by Dr. Hamati were adopted by the ALJ. The ALJ limited Plaintiff to light work with a sit-stand option. As for postural activities, the ALJ found that Plaintiff could not crouch or crawl, but could occasionally perform other postural movements. Regarding the doctor's assertion that Plaintiff could not bend/stoop or twist, the ALJ discounted such as this limitation

is neither supported nor explained. (PageID.56). It is undisputed that Dr. Hamati failed to explain his opinion or identify any evidence in support thereof. The evidence of record does not support the doctor's opinion that Plaintiff can never bend/stoop or twist. Substantial evidence, however, does support the ALJ's conclusion that Plaintiff can occasionally engage in postural movements other than crouching or crawling. The ALJ properly discounted Dr. Hamati's opinion. 20 C.F.R. § 404.1529(c)(3)-(4) (a medical provider's opinion may be discounted where such not explained and is inconsistent with the medical evidence). Accordingly, this argument is rejected.

### III. The ALJ's Step Five Determination is Supported by Substantial Evidence

At step five of the sequential process, the burden shifts to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See* 20 C.F.R. § 404.1566; 42 U.S.C. § 423(d)(2)(A). The Commissioner satisfies this requirement by demonstrating that there exists a significant number of jobs either: (1) in the region where the claimant resides, or (2) in multiple other regions of the country. *See* 20 C.F.R. § 404.1566; 42 U.S.C. § 423(d)(2)(A).

At the administrative hearing, the vocational expert testified as to the number of jobs that existed in the national economy which Plaintiff could perform despite her limitations. (PageID.98-100). The vocational expert did not testify as to the number of jobs which existed in the region where Plaintiff resides. The vocational

expert likewise did not testify whether the jobs which she identified in the national economy existed in more than one region of the United States. Plaintiff argues that the ALJ's failure to establish whether the jobs in question existed in the region where she resides or in multiple other regions entitles her to relief.

As noted above, the Sixth Circuit has held that "[s]ix thousand jobs in the United States" satisfies the Commissioner's requirement to identify a significant number of jobs in the national economy which a claimant can perform. In this matter, the vocational expert testified that there existed approximately 160,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. Given that the vocational expert identified such a large number of jobs, it was reasonable for the ALJ "to infer that such jobs exist in several regions." *Vining v. Astrue*, 720 F.Supp.2d 126, 128 (D. Maine 2010) (expressly rejecting the argument that claimant was entitled to relief because the ALJ failed to specify whether the 10,000 jobs identified by the vocational expert existed in the region of claimant's residence or multiple regions). This argument is, therefore, rejected. Furthermore, Plaintiff has waived this issue by failing to raise such at the administrative hearing. *See, e.g., Hunt v. Commissioner of Social Security*, 2014 WL 345660 at *7 (W.D. Mich., Jan. 30, 2014).

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 36(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: January 10, 2020         /s/ Phillip J. Green
                              PHILLIP J. GREEN
                              United States Magistrate Judge